# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL THOMAS, | Case No.: 1:12-cv-01059-AWI-JLT |
| Petitioner, | FINDINGS AND RECOMMENDATIONS RE: RESPONDENT'S MOTION TO DISMISS |
| v. | |
| GIPSON, | ORDER DIRECTING OBJECTIONS TO BE FILED WITHIN TWENTY DAYS |
| Respondent. | |

Petitioner is a state prisoner proceeding in propria persona with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## **PROCEDURAL HISTORY**

The instant petition was filed on April 17, 2012 in the Sacramento Division of this Court.[1]

---

[1] In Houston v. Lack, the United States Supreme Court held that a pro se habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the actual date of its receipt by the court clerk. Houston v. Lack, 487 U.S. 166, 276, 108 S.Ct. 2379, 2385 (1988). The rule is premised on the pro se prisoner's mailing of legal documents through the conduit of "prison authorities whom he cannot control and whose interests might be adverse to his." Miller v. Sumner, 921 F.2d 202, 203 (9th Cir. 1990); see Houston, 487 U.S. at 271. The Ninth Circuit has applied the "mailbox rule" to state and federal petitions in order to calculate the tolling provisions of the AEDPA. Saffold v. Neland, 250 F.3d 1262, 1268-1269 (9th Cir. 2000); Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003). The date the petition is signed may be considered the earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule. Jenkins v. Johnson, 330 F.3d 1146, 1149 n. 2 (9th Cir. 2003). Accordingly, for all of Petitioner's state petitions and for the instant federal petition, the Court will consider the date of signing of the petition (or the date of signing of the proof of service if no signature appears on the petition) as the earliest possible filing date and the operative date of filing under the mailbox rule for calculating the running of the statute of limitation. Petitioner signed the instant petition on April 17, 2012. (Doc. 1, p. 6).

1

(Doc. 1). The petition, which challenges only Petitioner's 2005 validation as a member of the Black Guerilla Family ("BGF") prison gang, was transferred to the Fresno Division on June 28, 2012. (Doc. 5). On July 31, 2012, the Court ordered Respondent to file a response within sixty days. (Doc. 10). On September 28, 2012, Respondent filed the instant motion to dismiss the petition for untimeliness and for lack of habeas corpus jurisdiction. (Doc. 15). After being granted several extensions of time, Petitioner filed his opposition on December 19, 2012. (Doc. 20). Respondent filed a reply on December 27, 2012. (Doc. 21).

## DISCUSSION

A. Procedural Grounds for Motion to Dismiss

As mentioned, Respondent has filed a Motion to Dismiss the petition as being filed outside the one year limitations period prescribed by Title 28 U.S.C. § 2244(d)(1). Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed Respondent's to file a Motion to Dismiss in lieu of an Answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a Respondent can file a Motion to Dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's Motion to Dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s one-year limitation period and lack of habeas jurisdiction. Because Respondent's Motion to Dismiss is similar in procedural standing to a Motion to Dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal Answer, the Court will review Respondent's Motion to Dismiss pursuant to its authority under Rule 4.

///

B. <u>Limitation Period For Filing Petition For Writ Of Habeas Corpus</u>

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997). The instant petition was filed on April 17, 2012, and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases challenging a conviction or sentence, the limitation period begins running on the date that the petitioner's direct review became final. 28 U.S.C. § 2244(d)(1)(A). Where, however, as here, the petitioner is challenging a prison disciplinary or administrative action, the statute of limitations commences when the petitioner's final administrative appeal is denied, i.e., the "date on

which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" under § 2244(d)(1)(D). Redd v. McGrath, 343 F.3d 1077, 1079 (9th Cir. 2003)(holding that the Board of Prison Term's denial of an inmate's administrative appeal was the "factual predicate" of the inmate's claim that triggered the commencement of the limitations period); Shelby v. Bartlett, 391 F.3d 1061, 1066 (9th Cir. 2004)(holding that the statute of limitations does not begin to run until a petitioner's administrative appeal has been denied). The Ninth Circuit has held that the one-year statute commences under § 2244(d)(1)(D) when the petitioner could have discovered the factual predicate for his claims, not when he discovers the legal significance of those facts. Hasan v. Galaza, 254 F.3d 1150, 1154 n. 3 (9th Cir. 2001).

Petitioner's Director's Level appeal was denied on October 11, 2005. (Doc. 1, Exhibits, p. 1). Therefore, the limitations period commenced the following day, i.e., on October 12, 2005, and Petitioner would then have had one year from that date, or until October 11, 2006, within which to file his federal habeas petition. As mentioned, the petition was not filed until April 17, 2012, approximately five and one-half years *after* the limitation period would have expired. Thus, unless Petitioner is entitled to statutory or equitable tolling, the petition is untimely and should be dismissed.

  C. <u>Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)</u>

Under the AEDPA, the statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2). A properly filed application is one that complies with the applicable laws and rules governing filings, including the form of the application and time limitations. Artuz v. Bennett, 531 U.S. 4, 8, 121 S. Ct. 361 (2000). An application is pending during the time that 'a California petitioner completes a full round of [state] collateral review," so long as there is no unreasonable delay in the intervals between a lower court decision and the filing of a petition in a higher court. Delhomme v. Ramirez, 340 F. 3d 817, 819 (9th Cir. 2003), abrogated on other grounds as recognized by Waldrip v. Hall, 548 F. 3d 729 (9th Cir. 2008)(per curium)(internal quotation marks and citations omitted); see Evans v. Chavis, 546 U.S. 189, 193-194, 126 S. Ct. 846 (2006); see Carey v. Saffold, 536 U.S. 214, 220, 222-226, 122 S. Ct. 2134 (2002); see also, Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

Nevertheless, there are circumstances and periods of time when no statutory tolling is allowed. For example, no statutory tolling is allowed for the period of time between finality of an appeal and the filing of an application for post-conviction or other collateral review in state court, because no state court application is "pending" during that time. Nino, 183 F.3d at 1006-1007; Raspberry v. Garcia, 448 F.3d 1150, 1153 n. 1 (9th Cir. 2006). Similarly, no statutory tolling is allowed for the period between finality of an appeal and the filing of a federal petition. Id. at 1007. In addition, the limitation period is not tolled during the time that a federal habeas petition is pending. Duncan v. Walker, 563 U.S. 167, 181-182, 121 S.Ct. 2120 (2001); see also, Fail v. Hubbard, 315 F. 3d 1059, 1060 (9th Cir. 2001)(as amended on December 16, 2002). Further, a petitioner is not entitled to statutory tolling where the limitation period has already run prior to filing a state habeas petition. Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Jiminez v. White, 276 F. 3d 478, 482 (9th Cir. 2001). Finally, a petitioner is not entitled to continuous tolling when the petitioner's later petition raises unrelated claims. See Gaston v. Palmer, 447 F.3d 1165, 1166 (9th Cir. 2006).

The evidence submitted with the motion to dismiss establishes the following relevant chronology in state court: (1) state habeas petition filed in the Superior Court of Lassen County on February 23, 2006, and denied on November 15, 2006;[2,3] (2) state habeas petition filed in the California Court of Appeal on May 28, 2007, and denied on September 20, 2007 as to all claims except Petitioner's newly raised claim that he was not provided notice 24 hours before the hearing at which the gang validation was considered, for which an order to show cause was issued; (3) the Lassen County Superior Court denied the 24-hour notice claim referred to it by the Court of Appeal on September 9, 2009; (4) state habeas petition filed in the California Court of Appeal on January 13, 2011, and denied on February 3, 2011; and (5) state habeas petition filed in the California Supreme Court on April 6, 2011 and denied on January 4, 2012. (Doc. 15, Exhibits 1-9).

---

[2] In computing the running of the statute of limitations, the day an order or judgment becomes final is excluded and time begins to run on the day after the judgment becomes final. See Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001) (Citing Rule 6 of the Federal Rules of Civil Procedure).
[3] This petition asserted the gang validation was not supported by reliable evidence. (Doc. 15, Exhibit 1).

Based on the foregoing, the statute of limitation commenced to run, as mentioned previously, on October 12, 2005, and continued unabated until Petitioner filed his first state habeas petition on February 23, 2006. At that point, 136 days of the one-year period had expired. Respondent concedes that Petitioner is entitled to statutory tolling during the pendency of the first state petition until it was denied on November 15, 2006. However, Respondent argues that Petitioner is not entitled to "interval" tolling, i.e., the period between the denial of the first petition and the filing of the second petition, because of the undue delay between those two events. The Court agrees.

In reviewing habeas petitions originating from California, the Ninth Circuit formerly employed a rule that where the California courts did not explicitly dismiss for lack of timeliness, the petition was presumed timely and was deemed "pending." In Evans v. Chavis, 549 U.S.189 (2006), the Supreme Court rejected this approach, requiring instead that the lower federal courts determine whether a state habeas petition was filed within a reasonable period of time. 549 U.S. at 198 ("That is to say, without using a merits determination as an 'absolute bellwether' (as to timeliness), the federal court must decide whether the filing of the request for state court appellate review (in state collateral review proceedings) was made within what California would consider a 'reasonable time.'"). However, "'[w]hen a post-conviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2).'" Bonner v. Carey, 425 F.3d 1145, 1148 (9th Cir. 2005)(*quoting* Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005)). See also Carey v. Saffold, 536 U.S. at 226.

Therefore, under the analysis mandated by the Supreme Court's decisions in Pace and Evans, this Court must first determine whether the state court denied Petitioner's habeas application(s) as untimely. If so, that is the end of the matter for purposes of statutory tolling because the petition was then never properly filed and Petitioner would not be entitled to any period of tolling under § 2242(d)(2), either for the pendency of the petition itself or for the interval between that petition and the denial of the previous petition. Bonner, 425 F.3d at 1148-1149.

However, if the state court did not expressly deny the habeas petition(s) as untimely, this Court is charged with the duty of independently determining whether Petitioner's request for state court collateral review were filed within what California would consider a "reasonable time." Evans, 546

U.S. at 198. If so, then the state petition was properly filed and Petitioner is entitled to interval tolling.[4]

In Evans, the Supreme Court found that a six-month delay was unreasonable. Id. The Supreme Court, recognizing that California did not have strict time deadlines for the filing of a habeas petition at the next appellate level, nevertheless indicated that most states provide for a shorter period of 30 to 60 days within which to timely file a petition at the next appellate level. Evans, 546 U.S. at 201. After Evans, however, it was left to the federal district courts in California to carry out the Supreme Court's mandate of determining, in appropriate cases, whether the petitioners' delays in filing state petitions were reasonable. Understandably, given the uncertain scope of California's "reasonable time" standard, the cases have not been entirely consistent. However, among the Ninth Circuit as well as the various federal district courts in California, a consensus has emerged that any delay of sixty days or less is per se reasonable, but that any delay "substantially" longer than sixty days is not reasonable. Compare Stancle v. Clay, ___F.3d___, 2012 WL 3667315 *7 (9th Cir. 2012)(82 day delay unreasonable); Velasquez v. Kirkland, 629 F.3d 964, 968 (9th Cir. 2012)(delays of 81 and 91 days unreasonable); Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010)(delays of 115 and 101 days unreasonable); Banjo v. Ayers, 614 F.3d 964, 970 (9th Cir. 2010)(delay of 146 days unreasonable); Bennett v. Felker, 635 F. Supp. 2d 1122, 1126-1127 (C.D. Cal. 2009)(93 days unreasonable); Culver v. Director of Corrections, 450 F.Supp.2d 1135, 1140-1141 (C.D. Cal. 2006)(delays of 97 and 71 days unreasonable); Forrister v. Woodford, 2007 WL 809991, *2-3 (E.D. Cal. 2007)(88 day delay unreasonable); Hunt v. Felker, 2008 WL 364995 (E.D. Cal. 2008)(70 day delay unreasonable); Swain v. Small, 2009 WL 111573 (C.D.Cal. Jan. 12, 2009)(89 day delay unreasonable); Livermore v. Watson, 556 F.Supp. 2d 1112, 1117 (E.D.Cal. 2008)(78 day delay unreasonable; Bridges v. Runnels, 2007 WL 2695177 *2 (E.D.Cal. Sept. 11, 2007)(76 day delay unreasonable), with Reddick v. Felker, 2008 WL 4754812 *3 (E.D.Cal. Oct. 29, 2008)(64 day delay not "substantially" greater than sixty days); Payne v. Davis, 2008 WL 941969 *4 (N.D.Cal. Mar. 31, 2008 (63-day delay "well within the 'reasonable' delay of thirty to sixty days in Evans").

---

[4] Neither the Ninth Circuit nor the United States Supreme Court has addressed whether a delay in filing may deprive a petitioner of statutory tolling for the pendency of an otherwise properly filed state petition itself when the state court does not expressly indicate that the petition was untimely. Presently, Evans only affects entitlement to interval tolling.

Moreover, even when the delay "significantly" exceeds sixty days, some courts have found the delay reasonable when the subsequent petition is substantially rewritten. E.g., Osumi v. Giurbino, 445 F.Supp 2d 1152, 1158-1159 (C.D.Cal. 2006)(3 month delay not unreasonable given lengthy appellate briefs and petitioner's substantial re-writing of habeas petition following denial by superior court); Stowers v. Evans, 2006 WL 829140 (E.D.Cal. 2006)(87-day delay not unreasonable because second petition was substantially re-written); Warburton v. Walker, 548 F.Supp.2d 835, 840 (C.D. Cal. 2008)(69-day delay reasonable because petitioner amended petition before filing in Court of Appeal).

Here the period between the denial of the first petition and the filing of the second petition was a period of 194 days, i.e., over six months, a span of time that, under all of the cases, is deemed to be unreasonable. Accordingly, Petitioner is not entitled to interval tolling for this period of time. Thus, this 194 day period is added to the 136 days already expired, meaning that, as of September 20, 2007, when the Court of Appeal issued its denial as to all of Petitioner's claims except the 24-hour notice issue, Petitioner had used 330 days of his 365-day period, leaving only 35 days remaining of his one-year period.

Petitioner did not file another state habeas until January 13, 2011; however, the one-year period re-commenced on September 21, 2007 as to all claims except the 24-notice issue, and expired 35 days later, i.e., on October 25, 2007.

Because the one-year period expired as to all of these claims on October 25, 2007, Petitioner is not entitled to statutory tolling for subsequently filed state petitions. A petitioner is not entitled to tolling where the limitations period has already run prior to filing a state habeas petition. Green v. White, 223 F.3d 1001, 1003 (9th Cir. 2000); Jiminez v. Rice, 276 F.3d 478 (9th Cir. 2001); see Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000)(same); Ferguson v. Palmateer, 321 F.3d 820 (9th Cir. 2003)("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Jackson v. Dormire, 180 F.3d 919, 920 (8th Cir. 1999) (petitioner fails to exhaust claims raised in state habeas corpus filed after expiration of the one-year limitations period).

To the extent that Petitioner is seeking to raise the 24-hour notice claim in the instant petition, the one-year period had expired on that claim before the instant petition was filed as well. As mentioned, the superior court denied that claim on September 9, 2009. The one-year period would have re-started on September 10, 2009 and expired 35 days later on October 14, 2009,[5] well before Petitioner filed his next state petition on January 13, 2011. Again, because the one-year period had expired, the January 13, 2011 petition and any subsequent petition did not afford Petitioner additional statutory tolling under the AEDPA. Green v. White, 223 F.3d at 1003. Thus, unless Petitioner is entitled to equitable tolling, the petition is untimely and should be dismissed.

D. Equitable Tolling.

The running of the one-year limitation period under 28 U.S.C. § 2244(d) is subject to equitable tolling in appropriate cases. See Holland v. Florida, __U.S.__, 130 S.Ct. 2549, 2561 (2010); Calderon v. United States Dist. Ct., 128 F.3d 1283, 1289 (9th Cir. 1997). The limitation period is subject to equitable tolling when "extraordinary circumstances beyond a prisoner's control make it impossible to file the petition on time." Shannon v. Newland, 410 F. 3d 1083, 1089-1090 (9th Cir. 2005)(internal quotation marks and citations omitted). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Holland, 130 S.Ct. at 2652; Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807 (2005). "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F. 3d 1062, 1066 (9th Cir. 2002)(citation omitted). As a consequence, "equitable tolling is unavailable in most cases." Miles, 187 F. 3d at 1107.

Here, in his opposition to the motion to dismiss, Petitioner argues that he is entitled to equitable relief on several bases: (1) misconduct and delay caused by his attorneys; (2) the fact that Petitioner was proceeding pro se; and (3) the September 20, 2007 order to show cause issued by the

---

[5] Respondent's motion calculates that the 32 remaining days would have expired on October 11, 2010. (Doc. 15, p. 7). The Court assumes that the date is a misprint and that Respondent meant October 11, 2009.

9

1  Court of Appeal did not deny his remaining claims.  (Doc. 20, pp. 9-12).  None of these arguments
2  have merit.
3      As to Petitioner's former attorneys, while Petitioner contends that his former attorneys did not
4  provide him with copies of his legal files or communicate with him in a timely manner, he does not
5  allege attorney misconduct sufficiently egregious to invoke the doctrine of equitable tolling.
6      Attorney negligence, including a miscalculation of a filing deadline, is not a sufficient basis for
7  applying equitable tolling to the § 2244(d)(1) limitation period.  Holland v. Florida, 130 S.Ct. 2549,
8  2010 WL 2346549 at *13-14 (June 14, 2010); Randle v. Crawford, 604 F.3d 1047, 1058 (9th Cir.
9  2010); Spitsyn v. Moore, 345 F.3d 796, 800 (9th Cir. 2003);  Frye v. Hickman, 273 F.3d 1144, 1146
10 (9th Cir. 2001).  However, attorney misconduct that is sufficiently egregious to meet the extraordinary
11 misconduct standard can be a basis for applying equitable tolling.  Spitsyn, 345 F.3d at 801.  In
12 Spitsyn, the attorney was retained a full year in advance of the deadline, but completely failed to
13 prepare or file a petition even though the attorney was repeatedly contacted by both the client and the
14 client's mother, and a grievance was filed with the state bar association complaining about the lack of
15 response.  Also, despite a letter terminating the representation and requesting the file, the file was not
16 turned over until two months after the expiration of the filing deadline.  The conduct was held to be
17 sufficiently egregious to warrant equitable tolling.  Id. at 798, 801.  It was still necessary, however,
18 that the petitioner act with reasonable diligence.  Id. at 802.
19     Here, Petitioner alleges mere negligence by his former counsel, not the type of egregious
20 attorney misconduct that was present in Spitsyn and that is required to access the doctrine of equitable
21 tolling.
22     Regarding Petitioner's pro se status, this is not a ground for invoking equitable tolling. A
23 petitioner's claims of ignorance of the law or lack of education, or even illiteracy, are not grounds for
24 equitable tolling.  Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006); see, e.g., Hughes v. Idaho
25 State Bd. of Corrections, 800 F.2d 905, 909 (9th Cir.1986) (pro se prisoner's illiteracy and lack of
26 knowledge of law unfortunate but insufficient to establish cause); Fisher v. Johnson, 174 F.3d 710 (5th
27 Cir. 1999); Rose v. Dole, 945 F.2d 1331, 1335 (6th Cir.1991).
28

Finally, Petitioner contends that the Court of Appeal's September 20, 2007 order to show cause did not expressly deny his remaining habeas claims, and therefore the one-year statute did not re-commence on September 21, 2007 as to those claims. This argument, however, is unavailing for Petitioner since, even assuming, arguendo, he were correct, the one-year clock would have re-commenced with the superior court's final denial of his claims on September 9, 2009, and the time for filing a federal petition would have expired, as they did for his 24-hour notice claim, 35 days later, i.e., on October 14, 2009. Thus, even if Petitioner is correct, that fact would only have delayed the expiration of the one-year period; it would not make the instant petition timely. Accordingly, the contention is irrelevant to a timeliness analysis.

Moreover, equitable tolling applies only where prisoner has diligently pursued claims, but has in some "extraordinary way" been prevented from asserting his rights. Thus, the court must consider petitioner's diligence in pursuing his claims. The chronology set forth above is replete with long periods of inactivity in which Petitioner did nothing to exhaust his federal claims in state court or to further his cause in any way. A petitioner who fails to act diligently cannot invoke equitable principles to excuse his lack of diligence. See, Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151 (1984); see, also, Miles, 187 F.3d at 1107. The Court has no alternative but to conclude that Petitioner did not act diligently in this case.

The burden of demonstrating that the AEDPA's one-year limitation period was sufficiently tolled, whether statutorily or equitably, rests with the petitioner. See, e.g., Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005); Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002); Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002). For the reasons discussed above, the Court concludes that Petitioner has not met his burden with respect to the tolling issue. Accordingly, the petition is late and should therefore be dismissed.

E.   Failure To State A Cognizable Habeas Claim.

Respondent next contends that the bases for Petitioner's claims, i.e., gang validation and placement in the Secure Housing Unit ("SHU") do not implicate the fact of Petitioner's confinement nor its length, and, since they only implicate conditions of confinement, they are not properly subject to federal habeas corpus jurisdiction. (Doc. 15, pp. 3-5). Petitioner responds that the fact of his gang

11

validation will be considered a determining factor by the Board of Parole Hearings ("BPH") in finding him unsuitable for parole in coming years. (Doc. 20, pp. 4-5). The Court agrees with Respondent.

A federal court may only grant a petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution . . . ." 28 U.S.C. § 2254(a). A habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement. Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991), *quoting*, Preiser v. Rodriguez, 411 U.S. 475, 485, 93 S. Ct. 1827 (1973); Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003)("[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence."); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases. Indeed, claims challenging the validity of a prisoner's continued incarceration, including the fact or length of the custody, lie within the "heart of habeas corpus" and are cognizable only in federal habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 498-99, 499 n.14 (1973). In contrast, an action pursuant to 42 U.S.C. § 1983 is appropriate for a state prisoner challenging the conditions of prison life but not the fact or length of the custody. McCarthy v. Bronson, 500 U.S. 136, 141-42 (1991); Preiser v. Rodriguez, 411 U.S. at 499; Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991).

With respect to prison disciplinary and administrative proceedings, it is established that a constitutional claim concerning the application of rules administered by a prison or penal administrator that challenges the duration of a sentence is a cognizable claim of being in custody in violation of the Constitution pursuant to 28 U.S.C. § 2254. See, e.g., Superintendent v. Hill, 472 U.S. 445, 454 (1985) (determining a procedural due process claim concerning loss of time credits resulting from disciplinary procedures and findings). The Supreme Court has held that challenges to prison disciplinary adjudications that have resulted in a loss of time credits must be raised in a federal habeas corpus action and not in a § 1983 action because such a challenge is to the very fact or duration of physical imprisonment, and the relief sought is a determination of entitlement of immediate or speedier release. Preiser v. Rodriguez, 411 U.S. 475, 500.

The Supreme Court's decisions concerning any boundaries between habeas jurisdiction and § 1983 jurisdiction have been rendered in cases involving § 1983 proceedings. Thus, it is established

that, regardless of the precise relief sought, an action pursuant to § 1983 concerning prison administrative processes is barred if success in the action would necessarily demonstrate the invalidity of the confinement or its duration, or necessarily imply the invalidity of a conviction or sentence. Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (parole processes). However, the limits on habeas jurisdiction, or the appropriate extent of any overlap between habeas and § 1983, have not been definitively addressed by the Supreme Court. The Supreme Court has adverted to the possibility of habeas as a potential alternative remedy to an action under § 1983 for unspecified additional and unconstitutional restraints during lawful custody, Preiser v. Rodriguez, 411 U.S. at 499-500, but it has declined to address whether a writ of habeas corpus may be used to challenge conditions of confinement as distinct from the fact or length of confinement itself, see, Bell v. Wolfish, 441 U.S. 520, 527 n.6 (1979). Nevertheless, the Court continues to recognize a "core" of habeas corpus that refers to suits where success would inevitably affect the legality or duration of confinement. For example, in Wilkinson, the Court noted that if success on a claim would mean at most a new opportunity for review of parole eligibility, or a new parole hearing at which authorities could discretionarily decline to shorten a prison term, then success would not inevitably lead to release, and the suit would not lie at the core of habeas corpus. Wilkinson, 544 U.S. at 82.

In the singular context of parole, cases in this circuit have recognized a possibility of habeas jurisdiction in suits that do not fall within the core of habeas corpus. Bostic v. Carlson, 884 F.3d 1267 (9th Cir. 1989) (expungement of disciplinary finding likely to accelerate eligibility for parole)[6]; Docken v. Chase, 393 F.3d 1024 (9th Cir. 2004) (a claim challenging the constitutionality of the frequency of parole reviews, where the prisoner was seeking only equitable relief, was held sufficiently related to the duration of confinement). However, relief pursuant to § 1983 remains an appropriate remedy for claims concerning administrative decisions made in prison where success would not necessarily imply the validity of continuing confinement. Docken v. Chase, 393 F.3d at 1030 (characterizing Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997) (holding that a § 1983 suit is an appropriate remedy for challenges to conditions [there, administrative placement in a sex offender program affecting eligibility for parole] which do not necessarily imply the invalidity of continuing

---

[6] The Court notes that Bostic involved a suit pursuant to 28 U.S.C. § 2241, not § 2254.

13

1  confinement).

2  Nevertheless, it is established in this circuit that where a successful challenge to a disciplinary
3  hearing or administrative sanction *will not necessarily* shorten the overall length of confinement, then
4  habeas jurisdiction is lacking.  In Ramirez v. Galaza, 334 F.3d 850 (9th Cir. 2003), a prisoner sought
5  relief pursuant to § 1983 for allegedly unconstitutional disciplinary proceedings that resulted in
6  administrative segregation.  It was held that § 1983 was the appropriate remedy because the alleged
7  constitutional errors did not affect the overall length of the prisoner's confinement; success in the §
8  1983 action would not necessarily result in an earlier release from incarceration, and the § 1983 suit
9  did not intrude upon the core or "heart" of habeas jurisdiction.  Ramirez, 334 F.3d at 852, 858.

10  The court in Ramirez went further and considered the related question of the extent of habeas
11  corpus jurisdiction, expressly stating that its holding "also clarifies our prior decisions addressing the
12  availability of habeas corpus to challenge the conditions of imprisonment."  334 F.3d at 858.  The
13  court reviewed the decisions in Bostic v. Carlson and Neal v. Shimoda and concluded as follows:

> Our decision in Neal v. Shimoda, 131 F.3d 818 (9th Cir.1997), illustrates the importance of measuring the likelihood that a suit under § 1983 will affect the length of the prisoner's confinement. In Neal, two state prisoners filed suits under § 1983 alleging that they were classified as sex offenders in violation of the Due Process and Ex Post Facto guarantees. Id. at 822-23. Among other harms, both inmates argued that the classification affected their eligibility for parole. Id. We held that Heck did not require the inmates to invalidate their classification before bringing suit under § 1983, because a favorable judgment "will in no way guarantee parole or necessarily shorten their prison sentences by a single day." Id. at 824. The prisoner suits did not seek to overturn a disciplinary decision that increased their period of incarceration. Rather, a successful § 1983 action would provide only "a ticket to get in the door of the parole board." Id. A favorable judgment, therefore, would not "undermine the validity of their convictions," or alter the calculus for their possible parole. Id.
>
> Neal makes clear that under Preiser habeas jurisdiction is proper where a challenge to prison conditions would, if successful, necessarily accelerate the prisoner's release. Thus, Neal accords with our holding here that habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence.

Ramirez, 334 F.3d at 858-59.

Thus, habeas jurisdiction might be predicated on some "conditions" claims affecting parole if
there is a sufficient nexus to the length of imprisonment or a sufficient likelihood of affecting the
overall length of a prisoner's confinement.  Docken v. Chase, 393 F.3d at 1030-31.  However, the
appellate court has emphasized that measurement of the likelihood will result in an absence of habeas

jurisdiction where the challenge will not necessarily shorten the overall sentence. Ramirez, 334 F.3d at 859. In Ramirez, expungement of the disciplinary action was not shown to be likely to accelerate eligibility for parole; rather, success there would have meant only an opportunity to seek parole from a board that could deny parole on any ground already available to it. Thus, the suit did not threaten to advance the parole date. Id. at 859.

Here, Petitioner does not cite, and the Court is unaware of, any legal authority holding that Petitioner has a federal constitutional right to an accurate gang "validation." Thus, any liberty interest in a gang validation or SHU placement must arise under California law. A liberty interest arises under state law when an inmate is subjected to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995).

The mere possibility, however, of a denial of parole at some later, yet undetermined, time, where one of the considerations for parole is inaccurate information about an inmate's gang membership, does not amount to the denial of a liberty interest. In Sandin, the U.S. Supreme Court concluded that a *possible* loss of credits due to a disciplinary conviction was insufficient to give rise to a liberty interest where "[n]othing in [the State's] code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, even though misconduct is by regulation a relevant consideration." Sandin, 515 U.S. at 487. The Court went on to note that "[t]he decision to release a prisoner rests on a myriad of considerations," and an inmate is generally "afforded procedural protection at this parole hearing in order to explain the circumstances behind his misconduct record." Id. at 487. The Court held that "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." Id.

After Sandin, in order to demonstrate a liberty interest, an inmate must show that a disciplinary conviction will inevitably lengthen the duration of the inmate's incarceration. Id. The Court finds no logical or practical basis upon which to distinguish the instant allegation, i.e., that an erroneous gang "validation" will impact Petitioner's future chances for parole, from the allegation in Sandin that an erroneous disciplinary finding detracted from the inmate's chances for parole. Accordingly, the same

result should obtain, i.e., that Petitioner does not have a liberty interest in an accurate gang validation. Since Petitioner has failed to establish that such an erroneous validation will "inevitably lengthen the duration" of his incarceration, there is no due process interest at issue and thus no basis for this Court to assert its habeas jurisdiction.

As Respondent correctly observes, in addition to the gang validation, the BPH is required by California law to consider a wide range of factors in assessing whether an individual inmate is suitable for parole; indeed, the BPH may consider factors as wide-ranging as the original crime, an inmate's criminal and social history, his conduct in prison, any psychological evaluations, Petitioner's efforts at rehabilitation, his remorse and understanding of the crime and its effects of the victims, as well as any parole plans he may have. Cal. Code Regs. Tit. 15, § 2402(b)-(d). In other words, any parole decision depends on "an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based on their experience with the difficult task of evaluating the advisability of parole release." Greenholtz v. Inmates of Nebraska Corr. & Penal Complex, 442 U.S. 1, 9-10, 99 S.Ct. 2100 (1979).

Here, the mere fact of Petitioner's gang validation, while constituting one of a myriad of factors that the BPH would consider in a parole hearing, is simply too attenuated to invoke the protections of due process, Sandin, 515 U.S. at 487, and can hardly be considered so pivotal to the question of granting parole that one could conclude that a sufficient nexus exists between it and the length of imprisonment such that a sufficient likelihood exists of it affecting the overall length of a Petitioner's confinement. Docken, 393 F.3d at 1030-31.

To the extent that Petitioner contends that he has forfeited good-time credits as a result of his validation and SHU placement—which, he claims, will impact his eligibility for parole—Petitioner's status as an inmate serving an indeterminate sentence combined with the fact that he is beyond his Minimum Eligible Parole Date ("MEPD") defeats such a claim. As a state prisoner serving an indeterminate life sentence, Petitioner's credit-earning is governed by state regulations. Section 2290(a) of Title 15 provides as follows:

> Life prisoners may earn post-conviction credit for each year spent in state prison. Post-conviction credit for time served prior to the hearing at which a parole date is established shall be considered at that parole consideration hearing. Thereafter, post-conviction credit for time

> served since the last hearing shall be considered at progressive hearings. In no case may post-conviction credit advance a release date earlier than the minimum eligible parole date.[1]

Put simply, once Petitioner has reached his MEPD, his credit-earning potential as an inmate serving an indeterminate life sentence has no bearing at all on the length of time he will actually remain in prison, since, at that point, such a determination is made solely by the Board of Parole Hearings ("BPH") after conducting a suitability hearing.

Here, Petitioner is serving an indeterminate life term with the possibility of parole and reached his MEPD in 2009. (Doc. 15, Ex. 10, Chronological History, pp. 1, 3). Since the loss of the credits about which Petitioner complains can only be used under California regulations for adjusting the date of the MEDP and that date has already passed, it is clear that any loss of such credits at this post-MEDP juncture can and will have no effect on Petitioner's ultimate release date. As discussed previously, only the BPH has the power to affect the length of Petitioner's sentence.

Petitioner has made no allegation, nor has he established, that granting the relief he requests in the instant petition would have any material impact on the length of his sentence, i.e., the date on which the BPH ultimately decides Petitioner is suitable for parole, if ever. Because of this, the Court concludes that <u>none</u> of Petitioner's complaints, if corrected, would <u>necessarily</u> shorten Petitioner's overall sentence. Ramirez, 334 F.3d at 859 (emphasis supplied). Thus, habeas jurisdiction is absent for and the petition should be dismissed.

Finally, for good reason, even where habeas jurisdiction does exist, federal courts are nevertheless reticent to micro-manage a respondent's decisions regarding the day-to-day handling of prison discipline and inmate safety. "[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment....Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life...." Sandin v. Conner, 515 U.S. 472, 482 (1995). In Procunier v. Martinez, 416 U.S. 396, 404-405 (1974), <u>overruled in part on other grounds</u>, Thornburgh v. Abbott, 490 U.S. 401 (1989), the Supreme Court explained the basis for this

---

[1] Title 15 of the Code of California Regulations § 2000(b)(3) defines a "life prisoner" as "a prisoner serving a sentence of life with the possibility of parole." Life sentences may be imposed for, inter alia, both first and second degree murder. Cal. Code Regs., tit. 15, § 2000(b)(3)(B and C)). Here, Petitioner was sentenced to an indeterminate 25-year-to-life term for murder first degree murder and robbery with use of a firearm. (Doc. 1, p. 66). Having been convicted of first degree murder, Petitioner falls within the provisions of this regulation vis-a-vis his credit-earning ability.

deference:

> Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration. In part this policy is the product of various limitations on the scope of federal review of conditions in state penal institutions. More fundamentally, this attitude springs from complementary perceptions about the nature of the problems and the efficacy of judicial intervention. Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody. The Herculean obstacles to effective discharge of these duties are too apparent to warrant explication. Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism.

Procunier, 416 U.S. at 404-405. Thus, even if Petitioner's claim of improper validation and consequent SHU placement were cognizable in these habeas proceedings, for the reasons set forth in Sandin and Procunier, this Court would be extremely hesitant to second-guess CDCRj's administrative decision to validate Petitioner and place him in SHU confinement.

Since Petitioner has failed to establish that the claims in the instant petition would, if resolved favorably to him, likely have an effect on the length of his sentence, they are not properly brought as federal habeas claims. Accordingly, the Court lacks habeas jurisdiction and therefore, in addition to the fact of the petition's untimeliness, the claims should be dismissed for lack of jurisdiction as well

### **RECOMMENDATION**

Accordingly, the Court **HEREBY RECOMMENDS** that the motion to dismiss be **GRANTED** and the habeas corpus petition be **DISMISSED** for Petitioner's failure to comply with 28 U.S.C. § 2244(d)'s one year limitation period and lack of habeas jurisdiction.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty (20) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then

review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 11, 2013**             /s/ Jennifer L. Thurston
                                          UNITED STATES MAGISTRATE JUDGE